COMMONWEALTH of Pennsylvania,
Appellee,

v.

Luke Kane HALL, Appellant (at 2791).

COMMONWEALTH of Pennsylvania,
Appellant (at 3031),

v.

Luke Kane HALL, Appellee.

Superior Court of Pennsylvania.

Submitted March 19, 1998.

Filed June 3, 1998.

George A. Gonzalez, Reading, for Hall.

Allison W. Stoudt, Assistant District Attorney, Reading, for the Commonwealth.

Before CAVANAUGH, HUDOCK and HESTER, JJ.

CAVANAUGH, Judge:

We are here presented with an appeal by Luke Kane Hall and a counter appeal by the Commonwealth. Hall's appeal is from the trial court's judgment of sentence and is pursuant to an order of court which granted leave to file an appeal to this court nunc pro tunc. The Commonwealth's appeal is from the grant of the nunc pro tunc order.

The background is that Hall was arrested after an encounter with police officers in Reading. He had been subjected to a weapons search and, when the officer found a bulge in his pants pocket, Hall ran away and, while being pursued, discarded what was found to be incriminating drugs. An illegal search suppression order was sought and denied. At a waiver trial, Hall was convicted and given a 9 to 23 month sentence.

In January, 1997, a P.C.R.A. petition was filed but was rejected as untimely under amended 42 Pa.C.S.A. § 9545. The order of dismissal, however, provided that the dismissal was without prejudice to Hall's right to file a petition for appeal nunc pro tunc which, in turn, the court stated "would be outside the Post–Conviction Relief Act statutes".

Thereafter, the court, after hearing, entered a specific order which granted leave to appeal nunc pro tunc within 30 days.

The parties discuss Hall's appeal as being from the denial of the suppression motion although it is properly considered as an appeal from the judgment of sentence. Since

there is no substantive difference to our treatment of the issue, we will consider it as an appeal nunc pro tunc from the judgment of sentence. The Commonwealth, in turn, counter appeals from the grant of the order giving nunc pro tunc appellate rights to Hall. As we disagree with the Commonwealth on this issue, we consider the appeal nunc pro tunc and affirm the judgment of sentence.

The threshold issue is whether or not, in the present circumstances, the court was correct in granting nunc pro tunc appeal rights to Hall.

It is clear that the present Post–Conviction Relief Act is intended to be the exclusive means for persons convicted of crimes after exhaustion of or failure to pursue direct appeal rights.

42 Pa.C.S.A. § 9542

§ 9542. Scope of subchapter

This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. *The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.* This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, nor is this subchapter intended to provide a means for raising issues waived in prior proceedings. Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.

Act of April 13, 1988 P.L. 336, Amended Act of 1995 (Spec.Sess. No. 1) November 17, P.L. 1118. (emphasis added)

In the present matter, the right to appeal nunc pro tunc was pursued after petitioner Hall filed a response to the trial court's Motion of Intention to Dismiss. Hall asserted alternatively that: (A) he should be granted the right to appeal nunc pro tunc or, (B) that the time limitations on P.C.R.A. peti-

tions as imposed by 42 Pa.C.S.A. § 9545(b) are unconstitutional. Since the trial court granted appeal rights, a decision on the constitutionality of § 9545(b) was avoided and on the Commonwealth's appeal before us, the only question is the propriety of the court's grant of nunc pro tunc appeal rights after, but not pursuant to, the petitioner's otherwise untimely P.C.R.A. petition.

Appellee and the trial court agree that the P.C.R.A. is the sole means for seeking to obtain collateral relief after final judgment and direct appeal. However, appellant Hall argues that courts have the inherent power to allow for appeal nunc pro tunc at least in instances where there has been fraud or a breakdown in the court's operations. It is further argued that the restrictive exception has been enlarged by our supreme court wherein it has been held:

Reading the civil cases and criminal cases together, the principle emerges that an appeal nunc pro tunc is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances.

*Commonwealth v. Stock*, 545 Pa. 13, 18, 679 A.2d 760, 764 (1996).

While *Stock* can be seen as supporting a broader based right to pursue delinquent appeals, it was, in fact, a case involving summary traffic offense and appellant therein had no rights under the P.C.R.A. since he did not meet the eligibility requirement of imprisonment, probation or parole. 42 Pa. C.S.A. § 9543(a)(1)(i). Accordingly, *Stock* does not answer the narrow question of whether delinquent appeal rights may be granted subsequent to the dismissal of a P.C.R.A. petition as untimely.

The trial court and appellant also find support in *In the Interest of A.P.*, 421 Pa.Super. 141, 617 A.2d 764 (1992), *affd.*, 536 Pa. 450, 639 A.2d 1181 (1994), where the court found a right of appeal nunc pro tunc in a matter involving a juvenile adjudication. Our court reasoned that a nunc pro tunc appeal was J.P.'s only remedy to vindicate his constitutional right to appeal.

The Commonwealth makes the pertinent counter argument that the juvenile in *In the*

*Interest of A.P.,* like the motorist in *Stock,* was not eligible for pursuit of his rights under the P.C.R.A. and that presently we have a case covered by the P.C.R.A. where the exclusivity provision controls.

Stated differently, then, the issue becomes whether the time-for-filing-petition provision 42 Pa.C.S.A. § 9545(b) may be overridden by a motion for the grant of right to file an appeal nunc pro tunc when that motion is specifically stated not to be a collateral attack.

This exquisite refinement of the law relating to appeals after conviction, came under scrutiny in *Commonwealth v. Petroski,* 695 A.2d 844 (Pa.Super.1997) where a panel of this court held that under the P.C.R.A., a petitioner who seeks grant of a right to appeal under an ineffectiveness claim, must, in order to merit the relief sought, plead and prove that his adjudication of guilt was made unreliable through counsel's ineffectiveness which, in the circumstances of the case, so undermined the truth determining process, that no reliable adjudication of guilt or innocence could have taken place. It is of present significance that in the recent en banc case of *Commonwealth v. Lantzy,* 712 A.2d 288 (Pa.Super.1998), the majority applied the *Petroski* limitation on the use of the P.C.R.A. as a vehicle to obtain a right to appeal nunc pro tunc. However, our court noted that "If a defendant desires to assert that counsel's ineffective assistance deprived him of the right to appeal, causing him prejudice, but *not affecting the underlying verdict or adjudication,* the defendant can seek relief by requesting an appeal nunc pro tunc." (citing *Commonwealth v. Stock, supra* ) and further noted "The fact that he will not be awarded relief under the P.C.R.A., does not prevent the petitioner from obtaining relief altogether." 712 A.2d 288 at 291.

Thus, our court, albeit *in dicta,* has given explicit recognition of a potential vehicle for relief from a failure to appeal claim outside of the framework of the P.C.R.A. While we share the Commonwealth's concern that such a right is at odds with the clear policy of exclusivity proclaimed by the P.C.R.A. we are persuaded by the assumption of *Petroski*

and *Lantzy* as well as the broad language of *Stock* in our supreme court.

■ We presently have the situation contemplated in *Petroski* and *Lantzy*—the trial court has accorded appellant delinquent appeal rights not under the umbrella of P.C.R.A. rights, but based upon a trial court's "inherent policies to grant a petitioner the right to file an appeal nunc pro tunc." While the trial court relief is based, in part, on pre–9545 amendment cases where failure to appeal was still recognized as part of the ineffectiveness rubric, and fails to anticipate the restrictions of *Petroski* and *Lantzy,* we conclude that there is a weight of authority in the language of our cases to support the endorsement of a right to seek a delinquent appeal right outside of the framework of the P.C.R.A. and that right, having been granted presently, we will not disturb it.

We do not share the Commonwealth's fear that the grant of appeal rights, nunc pro tunc, will open another avenue for a flow of criminal appeals after just convictions, since the grant of such rights is limited to extraordinary circumstances and will be available only to defendants who have not already pursued their direct appeal rights.

■ Accordingly, we address the single merits issue raised by appellant, Hall, in his appeal nunc pro tunc. His claim is that the trial court erred in failing to suppress the drugs which he asserts were seized in violation of his constitutional rights. We consider the Commonwealth's evidence, and the defense evidence, which is fairly uncontradicted, and are bound by the facts found by the trial court which are thus supported, and may reverse only for error of law. *Commonwealth v. Abdul–Salaam,* 544 Pa. 514, 678 A.2d 342 (1996).

Two Reading police officers, patrolling in their cruiser, saw defendant and a companion conversing in an alley near a café. The police parked their vehicle, the conversants broke up, and appellant approached the police car while getting his I.D. out of his wallet and asked "Is everything all right, officer?" After a brief exchange, the officer removed from his vehicle and noticed Hall had his hands in his pocket. He asked if he was

armed and Hall said he was not. Hall was asked to take his hands out of his pocket, but only removed his left hand. As the officer came to him, Hall pivoted with his hand in his pocket. After being asked again to remove his hand, he did, but became confrontational and stated that he would not be searched. The officer replied that he would not search him, but only pat him down for weapons. He did so and felt a bulge in his pocket consistent with packages of drugs. He told Hall that he believed that he had drugs in his pocket.[1] There was another verbal confrontation and Hall ran off with the officer in pursuit. Hall, during this chase near a railroad viaduct, reached in his right pocket and made a throwing motion and continued to run. Hall was finally overtaken when the fellow officer in the police cruiser cut him off. When patted down again, it was discovered that the bulge was gone and a subsequent search near the site of the throwing motion revealed a packet of drugs. Hall also had on his person a cellular phone, a digital pager and cash.

 It cannot be gainsaid that the initial observation was anything more than a mere encounter. However, when Hall approached with his hand thrust in his pocket and refused to remove it, the encounter escalated into a situation where the totality of circumstances involved a reasonable suspicion and justified a detention to stop and frisk. *Commonwealth v. Epps*, 415 Pa.Super. 231, 608 A.2d 1095 (1992); *Commonwealth v. Fink*, 700 A.2d 447 (1997). The circumstances giving rise to a reasonable suspicion are viewed through the eyes of a trained officer. *U.S. v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The trial court found that Hall's actions and his misstatements to the police, as well as his persistence in keeping his hand in his right pocket, gave rise to reasonable suspicion that he might be armed and dangerous sufficient to warrant a pat down for weapons. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In addition, the court found that the contraband was properly discovered under the plain feel

exception. *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Commonwealth v. Fink, supra.* Finally, we observe that here there is no issue of improper seizure under *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996) wherein our supreme court rejected the reasoning of the United States Supreme Court in *California v. Hodari D.* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) and found that an otherwise unjustified pursuit resulting in abandonment of contraband amounted to an impermissible seizure warranting suppression. As we have determined in this case, there was a pursuit following a lawful frisk which disclosed the presence of a reasonable suspicion of the possession of drugs which were, thereafter, abandoned by the appellant.

We conclude that: A) the present appeal is properly pursued under a grant of the right to appeal nunc pro tunc, B) the trial court did not err in refusing to grant the suppression order.

Judgment of sentence affirmed.

Order granting right to appeal nunc pro tunc affirmed.

---

[1] The witness testified as to familiarity with drug packaging gained through 100 to 200 drug arrests.