J-S21014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY ERIC POELLNITZ | : | |
| | : | |
| Appellant | : | No. 973 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 9, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007794-2018

BEFORE: LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.: FILED MAY 22, 2020

Timothy Eric Poellnitz appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his convictions for firearms not to be carried without a license (VUFA)[1] and two summary traffic violations[2] after a stipulated non-jury trial. Upon careful review, we affirm.

The Honorable Mark V. Tranquilli summarized the relevant procedural history and facts of the case as follows:

On December 20, 2018, the [c]ourt conducted a suppression hearing, entering its Findings of Fact[] and Conclusions of Law on the record. [Poellnitz's] motion was denied, and the case proceeded immediately to [] a stipulated non-jury [trial] with the suppression hearing testimony incorporated therein. [Poellnitz]

_____

[1] 18 Pa.C.S.A. § 6106(a)(1).

[2] 75 Pa.C.S.A. § 1543(B) (driving while operating privilege suspended or revoked); 75 Pa.C.S.A. § 4302 (periods requiring lighted lamps).

was convicted of the above charges, and on April 9, 2019, this [c]ourt sentenced him to one [] to two [] years of incarceration followed by three [] years of probation for the VUFA conviction, and a consecutive period of forty-five [] to ninety [] days of incarceration for [] driving with a suspended license; no further penalty was imposed at the remaining summary conviction. []

The facts as summarized represent the [c]ourt's suppression Findings of Fact[]. On March 4, 2018, shortly before midnight, [University of Pittsburgh Police Officer Donald] Chichilla conducted a traffic stop for a vehicle driving without headlights. While making contact with [Poellnitz], the operator of the vehicle, Officer Chichilla detected a strong odor of marijuana coming from the vehicle and observed an open container inside the vehicle compartment. During the traffic stop, [Poellnitz] informed [Officer Chichilla] that his driver's license was suspended [due to his involvement in a prior] DUI []. Thereafter, [Poellnitz] was ordered to exit the vehicle, and assisting Officer William Mathias performed a frisk for weapons after [Poellnitz] repeatedly put his hands in his pants pockets despite instruction to keep [his hands] visible. As Officer Mathias approached [Poellnitz] to conduct the pat down, he detected a strong odor of marijuana coming from [Poellnitz]'s person. The subsequent search of [Poellnitz's] outer clothing resulted in the recovery of a loaded .22 caliber pistol.

Trial Court Opinion, 10/28/19, at 2-3 (footnote omitted).

Following his trial and sentencing, Poellnitz filed a timely post-sentence motion on April 15, 2019, in which he requested an additional sixty days to file an amended post-sentence motion. The trial court granted the extension, and on June 13, 2019, Poellnitz filed a timely amended post-sentence motion. On June 20, 2019, the trial court entered an order denying that motion. On July 1, 2019, Poellnitz filed a timely notice of appeal. On July 11, 2019, the trial court ordered Poellnitz to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Poellnitz filed a timely Rule 1925(b) statement on July 17, 2019.

Poellnitz raises the following issues on appeal:

(1)     Was the trial court correct in determining there were specific and articulable facts articulated by Officer William Mathias [] that justified a Terry[3] frisk of [] Poellnitz, thus leading the trial court to [incorrectly] deny [] Poellnitz's [m]otion to [s]uppress the evidence obtained as a result of that frisk?

(2)     Was the trial court's sentence an abuse of its discretion given the fact that [Poellnitz] presented a character witness[] during his sentencing and the trial court's finding of several factors weighing in favor of a sentence in the mitigated range?

Appellant's Brief, at 3.

Poellnitz first claims that the trial court erred when it denied his motion to suppress because Officer Mathias' testimony lacked "sufficient specific and articulable facts" to support the frisk. Appellant's Brief, at 13. Our standard of review for a challenge to the denial of a suppression motion is well-settled:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

_____

3 Terry v. Ohio, 392 U.S. 1 (1968).

Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. Commonwealth v. Thomas, 179 A.3d 77, 81 (Pa. Super. 2018). "Search and seizure jurisprudence defines three levels of interaction between citizens and police officers and requires different levels of justification based upon the nature of the interaction." Id. (quoting Commonwealth v. Baldwin, 147 A.3d 1200, 1202-03 (Pa. Super. 2016)).

> These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. . . . The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest.

Thomas, 179 A.3d at 82. Our Supreme Court has explained that, "[r]easonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." Commonwealth v. Brown, 996 A.2d 473, 476 (Pa. 2010). "When considering the totality of the circumstances, we need not limit our inquiry to only those facts that clearly and unmistakably indicate criminal conduct. Instead, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." Commonwealth v.

Caban, 60 A.3d 120, 129 (Pa. Super. 2012) (citations and quotations omitted).

Additionally, our Supreme Court has previously explained the requirements for justifying a valid frisk search pursuant to an investigative detention:

> To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. In assessing the reasonableness of the officer's decision to frisk, we do not consider his unparticularized suspicion or hunch, but rather the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Commonwealth v. Zhahir, 751 A.2d 1153, 1158 (Pa. 2000) (citations, quotations, brackets, ellipses omitted). See also Commonwealth v. Hicks, 208 A.3d 916, 933 (Pa. 2019) ("[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.").

We have recently found a suspect's refusal to comply with police requests to remove his hands from his pockets justified a frisk of his person for the protection of police officers, so that they could pursue their investigation without fear of violence. See Thomas, 179 A.3d at 83-84. See also Commonwealth v. Scarborough, 89 A.3d 679, 683-84 (Pa. Super. 2014) (frisk justified where suspect, located in high crime area, reaches into jacket pocket and keeps hand there after police direct him to remove hand from pocket).

With regard to the validity of the frisk at hand, we note that at the suppression hearing, Officer William Mathias testified as follows:

[By the Commonwealth attorney]:

Q. Now, when you arrived on scene, what happened after that?

A. Officer Chichilla had [] Poellnitz out of the vehicle and [] Poellnitz was standing next to Officer Chichilla with his hands in his pockets. So Officer Chichilla informed me he was going to search the vehicle because of the smell of marijuana that was coming from the vehicle. So I told [] Poellnitz to step back to my location. When he started walking back to me, he took his hands out of his pockets. When he got to my location, he put his hands back in his pockets.

Q. And at that point, approximately how far away from you was he?

A. [] Probably [] a foot, two feet.

                    *      *      *

Q. At that point what did you do?

A. He kept putting his hands in his pockets. He had a strong smell of marijuana on his person. It made me nervous. I thought he might be armed. So I told him to turn around, put his hands behind his head and I began to search him, pat him down for weapons.

Q. And when you patted him down, did you feel anything on his person?

A. The first area I patted down was his right pants pocket. I felt a bulge in there I instantly recognized as a handgun. I went into his pocket and retrieved a handgun out of his pocket.

N.T. Suppression Hearing/Stipulated Non-jury Trial, 12/20/18, at 7-9. With regard to the particular facts Officer Mathias relied upon in justifying his frisk

of Poellnitz, Officer Mathias clarified his testimony on cross-examination as

follows:

[By Poellnitz's attorney]:

Q. Well, isn't it true that in your supplemental report, you indicated that you instructed Poellnitz to remove his hands from his pockets and that you began to pat Poellnitz down due to the smell of marijuana and his placing of his hands into his pockets, correct?

A. Yeah, the combination of the smell of marijuana and the fact that I told him a couple times to take his hands out of his pockets. He kept reaching in his pockets, and [] as soon as I asked if he had any weapons, his hands immediately went into his pockets.

Q. So you thought it was important to note in conjunction with the hands in the pocket in your report that you patted him down, because you kept smelling marijuana, right?

A. Yeah, it's been my experience drugs [] and guns go hand-in-hand a lot of times.

Q. So the reason you believed he was armed and dangerous was the smell of marijuana?

A. No. The fact that he kept putting his hands in his pockets.

Id. at 11-12 (emphasis added).

The suppression court made the following conclusions of law after the

suppression hearing:

[The court:]

But the [c]ourt does find that for the reasons stated, Officer Mathias did have reasonable suspicion to conduct a Terry frisk for officer[] safety[. U]nlike the Melendez case[,] where the search was predicated solely upon a smell of marijuana, and unlike other cases where searches have been predicated solely upon an officer's observation of some sort of nervous behavior on a

defendant, this case is different and is an amalgam of and a totality of the circumstances reviewed.

Officer Mathias was a backup officer [] tasked with keeping an eye on [Poellnitz]. It was shortly before midnight. He noted that [Poellnitz] was within two feet of him. There was a strong smell of marijuana coming directly from [Poellnitz.] . . . [Poellnitz] kept taking his hands in and out of his pants pockets, and although the officer did not discern the outline of a firearm, the officer was concerned based upon that behavior, both by [Poellnitz's] approach, and more importantly, [because Poellnitz continued to place his hands in his pockets] after [he] had been directed to keep his hands out of his pockets[. Poellnitz,] in close proximity to the officer[,] put his hands back in his front pants pocket, and the [c]ourt does find that Officer Mathias had reasonable suspicion that criminal activity could be afoot and that [Officer Mathias] was in danger both by [Poellnitz's] proximity, but, more importantly, by [Poellnitz's] failure to follow the officer's directions to keep his hands out of his pockets.

* * *

In this case, Officer Mathias did testify that based on his experience, guns and drugs go hand-in-hand, but I don't believe that this case can be painted into any particular corner [based solely on any single particular factor in this case]; rather, under the totality of the circumstances evaluation considering all of the behaviors, one in concert with the others, we do feel that the requisite level of reasonable suspicion was met.

Id. at 21-24 (emphasis added).

We agree with the trial court. Here, under the totality of the circumstances, Officer Mathias had reasonable suspicion to frisk Poellnitz where Poellnitz disobeyed the officer's command to remove his hands from his pockets, in close proximity to the officer, late at night, after the officer smelled drugs on the defendant, and where the officer's experience led him to believe that drugs and guns are often found together. See Thomas, supra. See also Commonwealth v. Hall, 713 A.2d 650, 653 (Pa. Super.

1998), rev'd on other grounds, 771 A.2d 1232 (Pa. 2001) (finding defendant's persistence in keeping his hand in his pocket after police asked to see his hands escalated mere encounter and justified stop and frisk). The suppression court's factual findings are supported by the record and its legal conclusions drawn from those facts are correct. Thus, Poellnitz's motion to suppress was properly denied. See Jones, supra.

In Poellnitz's second issue on appeal, he challenges the discretionary aspects of his sentence. Such challenges are not entitled to review as of right. Commonwealth v. Caldwell, 117 A.3d 763, 768 (Pa. Super. 2015). In Caldwell, we restated our four-part test for reaching the merits of challenges to discretionary aspects of sentencing claims:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

Id. (quoting Commonwealth v. Allen, 24 A.3d 1058, 1064 (Pa. Super. 2011)).

Here, Poellnitz filed a timely notice of appeal and preserved the issue in a post-sentence motion. Poellnitz also included a Rule 2119(f) statement of reasons to allow an appeal of the discretionary aspects of his sentence. See Appellant's Brief, at 11-12. We must, therefore, determine whether Poellnitz

raises a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. See Caldwell, supra.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa. Super. 2011). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." Commonwealth v. Conte, 198 A.3d 1169, 1174 (Pa. Super. 2018) (quoting Commonwealth v. Dodge, 77 A.3d 1263, 1268 (Pa. Super. 2013)).

Poellnitz raises two claims in his 2119(f) statement:

[First, Poellnitz] contends that the [t]rial [c]ourt exercised manifestly unreasonable judgment when it sentenced him without due or meaningful consideration of the statutory factors of 42 Pa.C.S. § 9721(b) and 42 Pa.C.S. §9781(d). . . . [Second, Poellnitz claims] that the [s]entencing [c]ourt imposed a manifestly excessive sentence where guideline sentences were imposed consecutively at each count of the criminal information.

Appellant's Brief, at 11-12.

We have previously held that a trial court's failure "to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense, and the rehabilitative needs of [the] Appellant, as 42 Pa.C.S.A. § 9721(b) requires," raises a substantial question. Commonwealth v. Riggs, 63 A.3d 780, 786 (Pa. Super. 2012). Conversely, with regard to challenges to the imposition of consecutive sentences, we have previously stated:

> [I]mposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Long[-]standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. We see no reason why a defendant should be afforded a volume discount for his crimes by having all sentences run concurrently.
>
> However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

Commonwealth v. Zirkle, 107 A.3d 127 (Pa. Super. 2014) (emphasis added; citations, quotations, brackets omitted).

Here, Poellnitz's first discretionary claim—that the court exercised manifestly unreasonable judgment in sentencing Poellnitz without due or meaningful consideration of the statutory factors—raises a substantial question; thus, we may review its merits. See Riggs, supra. Regarding Poellnitz's second discretionary claim, Poellnitz's criminal conduct included a VUFA conviction and two summary traffic violations. For these offenses, Poellnitz received an aggregate sentence of thirteen-and-one-half to twenty-seven months' incarceration. We note that if Poellnitz were sentenced in the standard range for only his VUFA conviction, he would have been sentenced to twenty-four to thirty-six months' incarceration. The trial court's aggregate

sentence, under these circumstances, was not so manifestly excessive such that it raises a substantial question.  See Zirkle, supra.

We therefore review only Poellnitz's first discretionary sentencing claim on its merits.   Our standard of review of the discretionary aspects of a sentence is well-settled:

> In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard.   Additionally, this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d).  Section 9781(c) reads:
>
>> (c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>>
>>> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>>>
>>> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>>>
>>> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>>
>> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> 42 Pa.C.S. § 9781(c).
>
> In reviewing the record, we consider:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Dodge, 77 A.3d at 1274. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988).

Here, the sentencing court sentenced Poellnitz within the mitigated range of the sentencing guidelines; therefore, Poellnitz must show that the application of the guidelines was clearly unreasonable. See 42 Pa.C.S. § 9781(c)(2). Poellnitz argues that the trial court abused its discretion because:

> The trial court's sentence of [] Poellnitz was inconsistent with the Sentencing Code, as there was no victim, [] Poellnitz's rehabilitative needs are better served surrounded by his familial support system, and [] Poellnitz stated he was not a threat to society. The aggregate sentence imposed by the trial court implies that [] Poellnitz is incapable of reform or a return to society, thus necessitating confinement for an extended period of time. [] Poellnitz asserts that the mitigating evidence presented during the sentencing hearing contradicts that assumption.

Appellant's Brief, at 19. Poellnitz argues further that, at sentencing, the trial court did not properly weigh the mitigating evidence presented including: Poellnitz's prior record score, his lack of a violent history, his family support system, his honorable military service, and that he was not a threat to himself or others. See id. at 19-21. Additionally, Poellnitz claims the court did not

- 13 -

properly consider the testimony of RaWanda Morris, with whom Poellnitz was in a long-term relationship and helped raise children. Her testimony was that Poellnitz had been a model "significant other." See id. at 19-20.

In arguing an abuse of discretion, Poellnitz essentially asks this Court to re-weigh the sentencing factors presented to the trial court. This we cannot do. See Commonwealth v. Griffin, 804 A.2d 1, 9 (Pa. Super. 2002) (citing Commonwealth v. Williams, 562 A.2d 1385, 1388 (Pa. Super. 1989) (en banc) (allegation sentencing court failed to consider or did not adequately consider various factors is request that this Court substitute its judgment for that of lower court in fashioning appellant's sentence, which does not raise substantial question)). Also, at sentencing, Judge Tranquilli stated that he had the benefit of reading Poellnitz's pre-sentence report. See N.T. Sentencing, 4/9/19, at 3, 10, 11, 14. Therefore, we assume that the trial court properly weighed Poellnitz's mitigating statutory factors. See Devers, supra. Finally, despite Poellnitz's claims to the contrary, the sentencing court did consider his stated mitigating factors:

> [T]here are some mitigating factors in this case. And I do always consider mitigating factors no matter what the circumstance. One of the mitigating factors is you really don't have a violent history. Another one of the mitigating factors is you have a family support system. Another mitigating factor is you served your country and were honorably discharged. I do believe you deserve a mitigated-range sentence.

N.T. Sentencing, 4/9/19, at 13. Consequently, Poellnitz has not shown that application of the sentencing guidelines would be clearly unreasonable; thus, his discretionary aspect of sentencing claim fails. See 42 Pa.C.S. §

9781(c)(2). Therefore, the sentence imposed on Poellnitz was not an abuse of the trial court's discretion. See Dodge, supra.

    Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2020